1  Gregory L. Spallas, Esq. (SBN 129306)
   Shivani Sutaria, Esq. (SBN 249942)
2  **PHILLIPS, SPALLAS & ANGSTADT LLP**
   Three Embarcadero Center, Suite 550
3  San Francisco, California 94111
   Tel:    (415) 278-9400
4  Fax:    (415) 278-9411
   gspallas@psalaw.net
5  ssutaria@psalaw.net

6  Attorneys for Defendant
   WAL-MART STORES, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10 BETTY J. POMEROY,                    )  Case No. 1:09-cv-02209-LJO-SKO
                                        )
11            Plaintiff,                )
                                        )
12 v.                                   )  **DEFENDANT WAL-MART STORES,**
                                        )  **INC.'S MEMORANDUM OF POINTS**
13 WAL-MART STORES, INC., a Delaware    )  **AND AUTHORITIES IN SUPPORT OF**
   Corporation, and DOES 1 through 100, )  **ITS MOTION FOR SUMMARY**
14 inclusive,                           )  **JUDGMENT OR IN THE**
                                        )  **ALTERNATIVE, SUMMARY**
15            Defendants.               )  **ADJUDICATION**
                                        )  [FRCP 56; E.D. Local Rule 260]
16                                      )
                                        )  Hearing Date:  June 29, 2011
17                                      )  Hearing Time: 8:30 a.m.
                                        )  Hon. Lawrence J. O'Neill (Courtroom 4)
18 _____  )

19

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

# TABLE OF CONTENTS

I.     INTRODUCTION...........................................................................................1

II.    STATEMENT OF UNDISPUTED FACTS...........................................................2

     A.   Plaintiff's Employment History...........................................................2

     B.   Wal-Mart Notified Plaintiff of the At-Will Employment Relationship...............2

     C.   Plaintiff Did Not Have a Written or Implied-in-Fact Contract with Wal-Mart.........3

         1.   Plaintiff Did Not Have a Written Contract with Wal-Mart.............................3

         2.   Plaintiff Did Not Have an Implied-in-Fact Contract with Wal-Mart..............3

             a.   Wal-Mart's Personnel Policies and Practices Do Not Establish an Implied-in-fact Contract of Employment.......................................3

             b.   Plaintiff's Length of Employment with Wal-Mart is Not Dispositive.......3

             c.   Wal-Mart Never Provided Plaintiff with Verbal or Written Assurances of Indefinite Employment.......................................4

             d.   At-Will Relationships is Customary in the Retail Industry..................4

     D.   In the Alternative, the Undisputed Facts Prove Wal-Mart Terminated Plaintiff for Good Cause ...................................................................4

III.   MEMORANDUM OF POINTS & AUTHORITIES.......................................6

     A.   The Summary Adjudication Analysis..................................................6

     B.   The Undisputed Evidence Demonstrates that Plaintiff Cannot Prevail on the First Cause of Action for Breach of Implied-in-Fact Employment Contract ..................7

         1.   The Undisputed Evidence Proves that Plaintiff and Wal-Mart Had an At – Will Employment Relationship.................................................7

         2.   The Undisputed Evidence Proves There is No Express Written Contract to Overcome the At-Will Presumption...............................................8

         3.   The Undisputed Evidence Proves There is No Implied-in-Fact Contract to Overcome the At-Will Presumption...............................................8

             a.   Wal-Mart's Personnel Policies and Practices Does Not Establish an Implied-in-Fact Contract of Employment...............................9

-ii-

DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

*Pomeroy v. Wal-Mart Stores, Inc., Case No. 1:09-cv-02209-LJO-SKO*

b.  Plaintiff's Length of Employment with Wal-Mart Does Not Establish an Implied-in-Fact Contract of Employment …...………………………11

c.  The Undisputed Evidence Shows a Lack of Verbal or Written Assurances of Indefinite Employment…………………………………………………..12

d.  The Undisputed Evidence Shows At-Will Relationships is the Practice of the Retail Industry……………………………………….…………...13

4.  If the Court Finds Plaintiff and Wal-Mart had an Implied-in-Fact Contract, the Undisputed Evidence Shows that Wal-Mart Terminated Plaintiff for Good Cause……………………………………………………13

C.  The Undisputed Evidence Demonstrates  that Plaintiff Cannot Prevail on the Second Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing ………………………………………………………………...15

IV.  **CONCLUSION** ..............................................................................**16**

///

1

## TABLE OF AUTHORITIES

2

**Case Law**

3    *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………….…………………….6, 7

4    *Coats v. Sears Roebuck Co.*, 2008 U.S. Dist. LEXIS 91133 at 9

5        (E.D. Cal. Nov. 10, 2008)………………………………………………7, 11, 12, 13

6    *Contreras v. Tyco Elecs. Corp.*, 2010 U.S. Dist. LEXIS 129738 at 10

7        (N.D. Cal. Dec. 8, 2010)…………………………………………………...10

8    *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal. 4th 93 (1998)……………………………..13, 15

9    *Davis v. Consolidated Freightways*, 29 Cal. App. 4th 354 (1994)…………………………10, 12

10    *DeHorney v. Bank of America Nat. Trust and Savings*, 879 F.2d 459 (9th Cir. 1989)…..…….6

11    *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359 (1999)…………..…….8, 12, 13

12    *Foley v. Interactive Data Corp.* 47 Cal.3d 654 (1988)…………………..…7, 9, 11, 12, 13, 15

13    *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317 (2000)…………………………..……7, 8, 9, 11, 15

14    *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426 (2007)……………………………..7

15    *Maley v. Pulte Home Corp.*, 2006 U.S. Dist. LEXIS 57213 at 9 (N.D. Cal. July 31, 2006)…..10

16    *Miller v. Pepsi-Cola Bottling Co.*, 210 Cal. App. 3d 1554 (1989)………………………..…12

17    *Moreau v. Air France*, 356 F.3d 942 (9th Cir. Cal. 2004)…………………..…9, 11, 12, 14

18    *Morisky v. Broward County*, 80 F.3d 445 (11th Cir. 1996)…………………..……………..6-7

19    *Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.*, 860 F. Supp. 1448 (1993)…6

20

**Statutory Authority**

21    California Labor Code §2922………………………………………………….…………7, 8

22

**Restatement**

23    Restatement of Contract §205…………………………………………….……..…15

24

**Rules**

25    Federal Rule of Civil Procedure 56…………………………………………..….……6

26    Federal Rule of Civil Procedure 56 (a)……………………………………….…….…6

27    Federal Rule of Civil Procedure 56(b)………………………………………..……….6

28    Federal Rule of Civil Procedure 56(c)…………………………………….…………7

**TO THE COURT AND PLAINTIFF'S COUNSEL OF RECORD:**

WAL-MART STORES, INC. herein moves this Court for summary judgment, or in the alternative, summary adjudication, on the grounds that there are no triable issues of material fact and that Wal-Mart is entitled to judgment as a matter of law because Plaintiff cannot establish the legal elements to prove that she is entitled to any form of relief for the following causes of action in the First Amended Complaint:[1]

(1) First Cause of Action for Breach of Implied-in-Fact Contract of Continued Employment;

(2) Second Cause of Action for Breach of Implied Covenant of Good Faith and Fair Dealing.

## I. <u>INTRODUCTION</u>

Wal-Mart is entitled to summary judgment as to both causes of actions in Plaintiff's First Amended Complaint. The undisputed facts, supported by Plaintiff's own testimony, will show that Plaintiff was an "at-will" employee, who could be terminated at any time for any reason. Plaintiff did not have an employment contract with Wal-Mart – either in writing or implied-in-fact. Even if Plaintiff is somehow able to show the existence of an employment contract, the causes of action must still fail as the undisputed facts demonstrate that Wal-Mart terminated Plaintiff for good cause. Thus, Plaintiff's first cause of action for Breach of Implied-in-Fact Contract of Continued Employment must be dismissed as a matter of law.

Plaintiff's second cause of action for Implied Covenant of Good Faith and Fair Dealing also fails because this claim is dependent on Plaintiff prevailing on her first cause of action, which she cannot do. Even if the court finds that Plaintiff raises issues of triable fact on the first cause of action, the second cause of action is superfluous and provides no additional remedies, and therefore must be dismissed.

For the foregoing reasons, the Court should find that there is no triable issue of material fact to protect either one of Plaintiff's causes of action from summary judgment; or in the

---

[1] *See* Defendant's Statement of Evidence, Exh. 1, Sutaria Affidavit ¶3, Exhibit A, Plaintiff's First Amended Complaint.

1  alternative the Court should find that there is no triable issue of material fact with respect to

2  Plaintiff's second cause of action and summary adjudication should be granted accordingly.

3  ## II. STATEMENT OF UNDISPUTED FACTS

4  **A.    Plaintiff's Employment History**

5         Wal-Mart store number 13 (Carthage, MO) hired Plaintiff on February 5, 1976 as an

6  hourly Sales Associate.   Please see Wal-Mart's Separate Statement of Undisputed Material

7  Facts in Support of its Motion for Summary Judgment or, in the alternative, Summary

8  Adjudication, filed concurrently herewith (hereinafter "DUF") at 1.   While Plaintiff was

9  employed at store number 13, she also worked as a Department Head for the Sporting Goods

10  and Automotive Departments and an associate in the Receiving Department, all of which are

11  hourly positions.  DUF 2.  In April 1989, Plaintiff transferred to store number 267 (Webb City,

12  MO).  DUF 3.

13         On or around October 1990, Plaintiff sought a transfer to a Wal-Mart Store in

14  Bakersfield, California where her husband's family was located.  Plaintiff accepted a transfer to

15  store number 1574 in Bakersfield, California as a Receiving Manager, which was an hourly

16  position. DUF 4.  Plaintiff held the hourly positions of invoice clerk, cash office associate and

17  receiving manager while at store number 1574.  DUF 5.  In August 1998, Plaintiff applied for a

18  transfer to store number 2557 in Bakersfield, California and accepted the position of Direct

19  Store Delivery ("DSD"), an hourly position. DUF 6.  Plaintiff remained in this position at store

20  number 2557 until her termination on December 5, 2007.  DUF 7.  At the time of Plaintiff's

21  termination, she was a full-time non-management employee, compensated at the hourly rate of

22  $20.31 and was receiving other employee benefits.  DUF 8.

23  **B.    Wal-Mart Notified Plaintiff of their At-Will Employment Relationship**

24         The undisputed evidence, as described *infra,* establishes that Wal-Mart intended its

25  relationship with Plaintiff to be at-will, and stated so in its written documents.   Moreover,

26  Plaintiff signed personnel documents acknowledging the at-will relationship.

27  //

28  //

**C.**     **Plaintiff Did Not Have a Written or Implied-in-Fact Employment Contract with Wal-Mart**

    **1.**     **Plaintiff Did Not Have a Written Employment Contract with Wal-Mart**

Plaintiff explicitly admits that she lacked a written employment contract during her entire employment with Wal-Mart. DUF 9. All the Wal-Mart associates deposed in this matter, regardless of whether they were hourly or management and worked at the store level or above, testified that they did not have written employment contracts with Wal-Mart nor are they aware of any Wal-Mart associate who had such a contract. DUF 10.

    **2.**     **Plaintiff Did Not Have an Implied-in-Fact Employment Contract with Wal-Mart**

Plaintiff's First Amended Complaint alleges she possessed an implied-in-fact employment contract with Wal-Mart. DUF 11. However, the undisputed facts, as described *infra,* prove that such an employment contract between Wal-Mart and Plaintiff did not exist. Moreover, in looking at the factors that determine whether an implied-in-fact employment contract existed, the undisputed facts support Wal-Mart's position that such a contract did not exist.

    *a.*     *Wal-Mart's Personnel Policies and Practices Do Not Establish an Implied-in-fact Contract of Employment*

Plaintiff cannot identify a single person or any letters, documents or policies from Wal-Mart that could support her belief that she enjoyed an implied-in-fact employment contract. DUF 12. As described *infra,* Wal-Mart's policies clearly show that the employment relationship was non-contractual. Furthermore, Wal-Mart's progressive discipline policy called "Coaching for Improvement" that outlines the steps that could be taken when an associate's behavior and job performance failed to meet the company's expectations does not create an implied-in-fact contract.

    *b.*     *Plaintiff's Length of Employment with Wal-Mart is Not Dispositive*

It is undisputed that Plaintiff worked for Wal-Mart for thirty-years, from 1976 to December 5, 2007. During that time, she received performance evaluations, pay raises and

promotions. DUF 13. However, as argued *infra,* this does not establish an implied-in-fact contract.

       *c.*      ***Wal-Mart Never Provided Plaintiff with Verbal or Written Assurances of Indefinite Employment***

The undisputed facts, as explained *infra,* show that Plaintiff cannot establish that anyone at Wal-Mart provided her with written or verbal assurances of job security or indefinite employment.

       *d.*      ***At-Will Relationships is Customary in the Retail Industry***

Wal-Mart is a retailer.  Plaintiff cannot provide evidence to refute that Wal-Mart, like other retailers, customarily have at-will relationships with their employees.  DUF 14.

**D.**    **In the Alternative, the Undisputed Facts Prove Wal-Mart Terminated Plaintiff for Good Cause**

In the event the court finds that Plaintiff had an employment contract with Wal-Mart, the undisputed facts demonstrate that Wal-Mart did not breach an implied-in-fact contract for employment as Wal-Mart held good faith reasons based on an investigation and reliance on its policies in terminating Plaintiff.

On December 4, 2007, Receiving Associate Kristi Swan told Assistant Manager Mario Esparza that Plaintiff had left work with a new watchband for which she had not yet paid.  DUF 15.  Esparza and/or Asset Protection Coordinator Michael Downes (now deceased) spoke to and obtained statements from witnesses including Benita Medrano, Kristi Swan, Vicky Knox, Silvia Ponce de Leon and Sara Bustamante.  DUF 16.

Jewelry Department Manager Vicky Knox told management that on or about December 3, 2007, Plaintiff gave her a watch to be fixed.  Knox contacted Plaintiff, also on December 3, 2007, to state she could not fix the watchband and explained the watch needed a new band.  Plaintiff agreed that Knox could replace the band; Plaintiff acknowledged that she would be required to pay for the new watchband, and stated she would pick it up before she left that day.  DUF 17.  Knox left the watch in a bag with the new band affixed on it, the old band and a note that read "Betty's Watch Receiving New Watch Band. Not Pd. For." DUF 18.  Jewelry

Department Sales Associate Sara Bustamante reported to management that Plaintiff retrieved the fixed watch from her that day.  Bustamante also reported that she told Plaintiff that she did not know if Plaintiff owed any money for the repairs, and that Plaintiff said she would speak to Knox the next day.  DUF 19.  Knox told management that Plaintiff wrote her personal cell number on the note in the bag.  DUF 20.  Plaintiff took the watch home with her.  DUF 21.

Plaintiff worked on Tuesday December 4, 2007.  DUF 22. Claims associate Sylvia Ponce de Leon told management that Knox had spoken to her about Plaintiff not paying for the new watchband.  Thus, Ponce de Leon telephoned the Receiving area for Plaintiff.  Ponce De Leon left a message with Plaintiff's Receiving coworker, Benita Medrano, to tell Plaintiff to call her and pay for the watch.  DUF 23.  Medrano told management that she told Plaintiff about the message when she returned from lunch, specifically that she needed to pay for her things.  Plaintiff responded she knew.  DUF 24.  Plaintiff's Receiving coworker Kristi Swan also told management that she told Plaintiff she needed to pay for the watchband, and Plaintiff said she knew.  Plaintiff admitted to this conversation with Swan.  DUF 25.

After collecting these witness statements, Downes met with the store manager and secured videotape of Plaintiff at the Jewelry counter retrieving the watch on December 3, 2007.  DUF 26.  Downes also consulted with Market Asset Protection Manager Kevin King to determine further action.  DUF 27.

Before coming to work on Wednesday December 5, 2007, Plaintiff realized that a new watch band had been placed on the watch, which she had not paid for. DUF 28.   Plaintiff then went to work.  Plaintiff worked almost her entire eight hour shift, and had taken a lunch break during which time associates can shop and take care of personal business.  DUF 29.  For approximately seven hours, including the time spent on her lunch break, Plaintiff knew she had not paid for a watchband which had been in her possession for over two days.  That day, management determined enough time had passed for Plaintiff to have paid for the watchband, and as she had failed to do so, it was appropriate to terminate Plaintiff for Gross Misconduct/Integrity Issues.  DUF 30.

//

Wal-Mart's "Coaching for Improvement Policy," addresses "Gross Misconduct"; which in pertinent part states: "Gross Misconduct will not be tolerated.  Coaching for improvement will not be used to address gross misconduct.  The employment of an associate who is deemed to engage in gross misconduct is subject to immediate termination." DUF 31. Plaintiff was aware that associates could be terminated without going through the disciplinary steps of the Coaching Policy. DUF 32.  The Coaching Policy lists "Theft" as "Gross Misconduct."  DUF 31. Plaintiff also considered theft to be gross misconduct.  DUF 33.  Plaintiff testified that theft of an item, regardless of the amount, is gross misconduct. DUF 33.  She also admitted that taking home merchandise not paid for was a violation of Wal-Mart's policies.  DUF 33. Plaintiff, as a long-time Wal-Mart associate, knew that Wal-Mart took integrity issues very seriously.  DUF 33.

## III.   MEMORANDUM OF POINTS & AUTHORITIES

### A.   The Summary Adjudication Analysis

Federal Rule of Civil Procedure 56 (hereinafter "FRCP 56" or "Rule 56") mandates summary judgment if the party who bears the burden of proof fails to demonstrate the existence of an essential element of their case after an adequate time for discovery.  *Celotex Corp. v. Catrett* 477 U.S. 317, 322 (1986).   No genuine issue of a material fact exists if the party with the burden of proof cannot establish an essential element of their case.  *Id.* at 323.  Upon a showing that there is no genuine issue of material fact as to particular claims or defenses, the Court may grant partial summary judgment in the moving party's favor upon all or any part thereof.  FRCP 56(a), (b); *see also Wang Laboratories, Inc. v. Mitsubishi Electronics, America, Inc.* 860 F. Supp. 1448, 1450 (1993).

Once the Defendant, as moving party, has met its burden, the burden shifts to Plaintiff to set forth specific facts, and not mere allegations or conclusions, to demonstrate that there is a genuine issue for trial.  *DeHorney v. Bank of America Nat. Trust and Sav.* 879 F.2d 459, 464 (9th Cir. 1989).  Rule 56 requires the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate the specific facts showing there is a genuine issue for trial."  FRCP 56(c); *Morisky v.*

1   *Broward County* 80 F.3d 445, 447 (11th Cir. 1996), *citing Celotex, supra* at 325.

2       In a Breach of Implied-in-Fact Contract cause of action, where the undisputed facts

3   negate the existence of such a contract, summary judgment is proper.  Even in cases where an

4   implied-in-fact contract is established, summary judgment is also proper when an employer

5   shows "good cause" for the termination. *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th

6   426, 433 (2007).

7       In consideration of these standards, the arguments set forth below, and the evidence and

8   affidavits filed concurrently herewith, there is no triable issue of material fact to disprove the

9   existence of an at-will relationship or in the alternative, to show that a written or implied-in-fact

10  employment contract existed between Plaintiff and Wal-Mart.  If the court finds that an

11  employment contract existed requiring Wal-Mart to terminate Plaintiff only for "good cause,"

12  then the undisputed facts prove that Wal-Mart indeed had such good cause and thus there was

13  no breach of contract.  Further, there is no triable issue of material fact to show that Wal-Mart

14  breached the covenant of good faith and fair dealing.

15  **B.   The Undisputed Evidence Demonstrates that Plaintiff Cannot Prevail on the First**

16       **Cause of Action for Breach of Implied-in-Fact Employment Contract**

17       **1.   The Undisputed Evidence Proves that Plaintiff and Wal-Mart Had an At –**

18            **Will Employment Relationship**

19       California Labor Code Section 2922 states, "An employment, having no specified

20  term, may be terminated at the will of either party on notice to the other."   An at-will

21  employment may be ended by either party "'at any time without cause,' for any or no reason,

22  and subject to no procedure except the statutory requirement of notice." *Guz, supra* at 335.

23  This Labor Code Section establishes a presumption of an at-will employer-employee

24  relationship in California. *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 677 (1988).  A clear

25  at-will provision in a written employment contract, signed by the employee, cannot be

26  overcome by evidence of a prior or contemporaneous implied-in-fact contract requiring good

27  cause for termination. *Coats v. Sears Roebuck Co.*, 2008 U.S. Dist. LEXIS 91133 at 9 (E.D.

28  Cal. Nov. 10, 2008)

1    In this case, the undisputed facts prove that an at-will relationship existed between

2    Plaintiff and Wal-Mart. Plaintiff testified that she believed she could have left Wal-Mart's

3    employment at anytime she wanted.  DUF 34.  In 1990, Plaintiff signed a "Transfer Notice for

4    Hourly Personnel" form, which states, "I understand I will remain terminable-at-will and free to

5    resign at any time I wish." DUF 35. On August 25, 1994, she received and signed the

6    "Acknowledgement of Receipt of Drug and Alcohol Abuse Policy," which states, "I understand

7    this is not a contract for employment and that I remain 'terminable at will' and free to resign

8    anytime I wish."  DUF 36.  Thus, this court must find that an at-will relationship existed

9    between Plaintiff and Wal-Mart, and thereby no triable issues exist regarding her Breach of

10   Implied-in-Fact Contract cause of action.

11       **2.    The Undisputed Evidence Proves There is No Express Written Contract to**

12            **Overcome the At-Will Presumption**

13    If the court finds that there is an ambiguity regarding the at-will relationship between

14   Plaintiff and Wal-Mart, then the undisputed evidence proves there is no express written contract

15   between the parties. The presumption of an at-will employment relationship as codified in

16   Labor Code Section 2922 can be overcome by a written employment contract.  *Guz* at 336.  The

17   burden is on the employee to prove the existence of such an express contract. *Eisenberg v.*

18   *Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386 (1999).

19    Plaintiff explicitly admits that she lacked a written employment contract during her

20   entire employment with Wal-Mart. DUF 9.  All the Wal-Mart associates deposed in this matter,

21   regardless of whether they were hourly or management and worked at the store level or above,

22   testified that they did not have written employment contracts with Wal-Mart nor are they aware

23   of any Wal-Mart associate who had such a contract.  DUF 10.

24       **3.    The Undisputed Evidence Proves that There is No Implied-in-Fact Contract to**

25            **Overcome the At-Will Presumption**

26    The presumption of at-will employment codified in Labor Code Section 2922 can also

27   be overcome by an implied-in-fact contract or agreement to the contrary.  *Guz* at 336.   An

28   implied-in-fact contract arises from the parties' *conduct* evidencing their mutual intent to place

DEFENDANT WAL-MART STORES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION
*Pomeroy v. Wal-Mart Stores, Inc., Case No. 1:09-cv-02209-LJO-SKO*

1   limits on the employer's right to terminate. *Foley* at 680.  This most typically takes the form of

2   requiring the employer to have "good cause" for termination.  *Guz* at 336.

3         Plaintiff's lawsuit is premised on her allegation that she possessed an implied-in-fact

4   employment contract with Wal-Mart.  DUF 11. However, Plaintiff cannot identify a single

5   person or any letters, documents or policies from Wal-Mart that could support her belief that

6   she enjoyed an implied-in-fact employment contract. DUF 12.  The Wal-Mart associates

7   deposed in this matter, regardless of whether were hourly or management and worked at the

8   store level or above, testified that they Wal-Mart did not provide them with promises of

9   employment with Wal-Mart for life or unfettered job security nor did they offer that to

10  associates they supervised.  DUF 37.

11        The California Supreme Court identified in *Foley* and subsequently followed in *Guz*

12  several factors that bear upon the existence and content of an implied-in-fact contract; these

13  factors include: "the personnel policies or practices of the employer, the employee's longevity

14  of service, actions or communications by the employer reflecting assurances of continued

15  employment, and the practices of the industry in which the employee is engaged." *Foley* at 680;

16  *Moreau v. Air France*, 356 F.3d 942, 953 (9th Cir. Cal. 2004).  As the Court indicated in *Foley*,

17  the nature of the implied-in-fact contract must be determined from the "totality of the

18  circumstances." *Foley* at 681.   In looking at these factors, the undisputed facts support Wal-

19  Mart's position that an implied-in-fact contract did not exist.

20        **a.**      **Wal-Mart's Personnel Policies and Practices Does Not Establish an**

21                  **Implied-in-Fact Contract of Employment**

22        One of the factors identified in *Foley* to ascertain the existence of an implied-in-fact

23  contract is "the personnel policies or practices of the employer."  *Id.* at 680.  Writings in

24  employer's policies indicating that the employer intended the employment relationship to be

25  contractual can provide evidence of an implied-in-fact contract.  *Id.*

26        However, in this case, Plaintiff cannot identify any letters, documents or policies from

27  Wal-Mart that could support her belief that Plaintiff enjoyed an implied-in-fact employment

28  contract. DUF 12.  In fact, Wal-Mart's personnel documents clearly show that the employment

relationship was expressly non-contractual.  On March 11, 1994, December 30, 1998 and March 26, 2001, Plaintiff signed an acknowledgment form that she had received and read the Wal-Mart Associate Handbook.  The language on the Acknowledgement form read, "This handbook is not a contract."  DUF 38. The 1998 and 2001 Acknowledgment forms also state "I understand that the information contained in this handbook are guidelines only, and are in no way interpreted as a contract."  DUF 38.

Furthermore, as stated above, Plaintiff signed a "Transfer Notice for Hourly Personnel" form in 1990, which states, "I understand I will remain terminable-at-will and free to resign at any time I wish." DUF 35. On August 25, 1994, she received and signed the "Acknowledgement of Receipt of Drug and Alcohol Abuse Policy," which states "I understand this is not a contract for employment and that I remain 'terminable at will' and free to resign anytime I wish."  DUF 36.

Plaintiff may argue that Wal-Mart's progressive discipline policy called "Coaching for Improvement" supports her proposition that she could be terminated only for "good cause." However, her arguments will fail.   The courts have said that maintaining a progressive discipline policy does not establish that the company has a policy or requirement of good cause for termination, particularly in cases where the employer also has a written policy of at-will employment.  *Maley v. Pulte Home Corp.*, 2006 U.S. Dist. LEXIS 57213 at 9 (N.D. Cal. July 31, 2006), citing *Davis v. Consolidated Freightways*, 29 Cal. App. 4th 354, 367 (1994).   An opposite finding would be against public policy because an employer would then be forced to terminate employees for any infraction or none at all in order to maintain the presumption of at-will employment.  *Davis* at 368.   Thus, in this case, the mere existence of Wal-Mart's coaching for improvement policy is not dispositive in the establishment of an implied-in-fact contract.

Moreover, terminating an associate for cause and/or stating the termination reason is "irrelevant to whether the employee had an implied employment contract. The fact that you do not need a reason to fire an at-will employee does not mean that, if you provide a reason, you have converted the employee from at-will status." *Contreras v. Tyco Elecs. Corp.*, 2010 U.S. Dist. LEXIS 129738 at 10 (N.D. Cal. Dec. 8, 2010).  Per Wal-Mart's Coaching policy, Wal-

1   Mart terminated Plaintiff for theft, a form of gross misconduct warranting immediate

2   termination. DUF 30-31.  This act, by itself, does not provide any support that anything other

3   than an at-will relationship existed.

4           **b.      *Plaintiff's Length of Employment with Wal-Mart Does Not Establish***

5                    ***an Implied-in-Fact Contract of Employment***

6           The courts have also factored in longevity of service, as well as related events such as

7   performance evaluations, raises, and promotions, when determining the existence of an implied-

8   in-fact contract.  *Foley* at 680; *Moreau* at 942.   Plaintiff contends that her thirty years of

9   employment with Wal-Mart over which time she received raises and favorable or average

10  performance reviews creates an implied-in-fact employment contract. DUF 39.  This is an

11  incorrect assertion on Plaintiff's part.  The California Supreme Court clearly explained in *Guz*,

12  "an employee's mere passage of time in the employer's service, even where marked with

13  tangible indicia that the employer approves the employee's work, cannot alone form an implied-

14  in-fact contract that the employee is no longer at will." *Guz* at 341-342.  See also *Coats* at 13-

15  14.  The Court in *Guz* further notes, "[a] "rule granting such contract rights on the basis of

16  successful longevity alone would discourage the retention and promotion of employees." *Id.* at

17  342.

18          It is undisputed that Wal-Mart employed Plaintiff from February 5, 1976 to December 5,

19  2007.  DUF 13.   Regardless of Plaintiff's length of time with Wal-Mart, it is also undisputed

20  that Plaintiff's employment with Wal-Mart could have ended at either party's choosing as it was

21  an at-will relationship. Plaintiff herself testified that she believed she could have left Wal-

22  Mart's employment at anytime she wanted. DUF 34.

23          Plaintiff alleges as further support regarding her claim for an implied-in-fact

24  employment contract with Wal-Mart that she received "good to excellent performance

25  evaluations and merit raises." DUF 39.  It is undisputed that Plaintiff, like all Wal-Mart

26  associates, received annual performance evaluations.  DUF 40.  It is also undisputed that Wal-

27  Mart provided Plaintiff, like all associates, pay raises based on her performance evaluation

28  ratings.  DUF 40.  However, the courts have repeatedly found that this does not create an

implied-in-fact contract.  Promotions, salary increases and positive performance evaluations are "natural occurrences of an employee who remains with an employer for a substantial length of time" that do not rebut the presumption of at-will employment." *Davis v. Consolidated Freightways*, 29 Cal. App. 4th 354, 368 (1994); *Miller v. Pepsi-Cola Bottling Co.*, 210 Cal. App. 3d 1554, 1559 (1989).  It is undisputed that at the time Plaintiff received her performance evaluations and pay raises, Wal-Mart management did not make assurances of future employment or job security.  DUF 41.  Moreover, by providing performance reviews and/or corresponding pay raises, Wal-Mart did not negate its intent to have the employment relationship with all of its employees be terminable at will.  DUF 42.

### c.  The Undisputed Evidence Shows a Lack of Assurances of Indefinite Employment

Another factor the courts have considered in determining the existence of an implied-in-fact contract is whether the employer provided the employee verbal or written assurances on indefinite employment.  *Foley* at 680; *Moreau* at 942.  The undisputed facts show that Plaintiff cannot establish that anyone at Wal-Mart told her that her employment with the company was going to be "forever."  DUF 43.  Plaintiff was not told that her place in the company was secure.  DUF 44.  Moreover, all the Wal-Mart associates deposed in this matter, regardless of whether they were hourly or management and worked at the store level or above, testified that they were not provided with promises of employment with Wal-Mart for life or unfettered job security.  DUF 37.  This further demonstrates that Wal-Mart did not extend implied-in-fact employment contracts to any of its employees, including Plaintiff.

Plaintiff may contend that she *believed* that she had indefinite employment with Wal-Mart, and could only be terminated for good cause.  *Coats v. Sears supra* at 9, a case before this Eastern District of California where defendant's motion for summary judgment was granted, involved a Plaintiff who held the belief that he could only be terminated for cause.  The Court found that "plaintiff's understanding, absent more, is insufficient to raise a triable issue of fact on an implied contract." *Id.* at 13.   The Court cited to *Eisenberg v. Alameda Newspapers, Inc., supra* at 1386, a case where the court also granted the employer's motion for summary

1   judgment; the *Eisenberg* court held that the plaintiff "*understood* respondents *to imply* he would

2   not be terminated without good cause," however plaintiff did not create a triable issue because

3   he failed to provide any evidence supporting his belief.  *Coats* at 13, citing *Eisenberg* at 1386.

4   In our case, Plaintiff testified that she "never really thought anything about it [being terminated

5   at any time].  DUF 46.  The topic of termination "never crossed [her] mind" since she was

6   performing her position, getting good evaluations and had been promoted.  Plaintiff's thoughts,

7   or lack of thoughts on the issue, are insufficient to prove the existence of an actual promise or

8   assurance of a specified term or job security by anyone at Wal-Mart.

9        **d.      The Undisputed Evidence Shows At-Will Relationships is the Practice**

10                **of the Retail Industry**

11       The courts have also considered the practices of the industry as it relates to the existence

12   of at-will employment relationship.  *Foley* at 680.  Wal-Mart is a retail establishment.  DUF 47.

13   In *Coats v. Sears* at a case involving a retail-employer, this Eastern District court found that

14   "there is no evidence of a company or industry wide practice that limited termination to just

15   cause." *Supra* at 14. Wal-Mart presents undisputed evidence that at-will employment

16   relationships are the custom and practice of the retail industry.  DUF 47.  Plaintiff will not be

17   able to present any triable facts disproving this fact within the retail industry.

18   **4.      If the Court Finds Plaintiff and Wal-Mart had an Implied-in-Fact Contract,**

19            **the Undisputed Evidence Shows that Wal-Mart Terminated Plaintiff for**

20            **Good Cause**

21       Under California law, "good cause" is defined as: "fair and honest reasons, regulated by

22   good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to

23   business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial

24   evidence gathered through an adequate investigation that includes notice of the claimed

25   misconduct and a chance for the employee to respond." *Cotran v. Rollins Hudig Hall Int'l, Inc.*,

26   17 Cal. 4th 93, 108 (1998).

27       As fully explained in the Undisputed Facts section of this motion, the information

28   provided to management from multiple witnesses about the actions of Plaintiff on December 3,

2007 through December 5, 2007 is undisputed. DUF 15-25.   Based on this information, management reasonably concluded that Plaintiff had been informed, at least by December 4, 2007, that she needed to pay for the new watchband which she had taken in her possession the day before.   Management knew that Plaintiff was put on notice on multiple occasions of the need to pay for the watchband.   Management also knew that Plaintiff had not paid for the watch at anytime after picking it up on December 3rd, no time on December 4th when she was in the store during her entire work shift and that she worked almost her entire shift on December 5, 2007 and did not pay for the watchband.   DUF 15-30.   Thus, management had reasonable grounds to believe that Plaintiff knowingly failed to pay for the watch, which warranted immediate termination.   DUF 30-31.

In *Moreau v. Air France*, the Ninth Circuit Court of Appeals found that there were triable issues of fact regarding the existence of an implied-in-fact contract.  *Id*. at 954.   However, the Court still affirmed the district court's grant of summary judgment for the employer because Plaintiff failed to prove his employer breached the employment contract.   The Ninth Circuit determined that Moreau's insubordination and unexcused absence, per the employer's handbook, was cause for immediate dismissal that was not subject to the progressive discipline system.   As such, there were no triable issues as to the breach.   *Id*.   In the case at bar, theft is listed as form of "gross misconduct" in the Coaching for Improvement policy.  DUF 31.   All actions categorized as "gross misconduct" warrant immediate termination.  DUF 31.  Following an investigation, management reasonably determined that Plaintiff committed theft by not paying for an item in her possession for over 48 hours despite notice of the need to pay for the watch, and in following its policy, immediately terminated her.   DUF 15-30. Thus, Plaintiff cannot provide any evidence that Wal-Mart lacked "good cause" for her termination.   In fact, Plaintiff's own testimony establishes that good cause existed for her termination in that she knew that the failure to pay for an item, regardless of the cost would constitute theft, which she also acknowledged was a terminable offense.

Plaintiff may try to create a triable issue by presenting disputed facts regarding the events leading to her termination or her disagreement with the termination decision.   However,

1   this would not preclude the court from dismissing this cause of action because the proper

2   inquiry is whether management possessed "good cause" in making the termination decision, not

3   whether Plaintiff agreed with it.  When an employee is terminated for misconduct, but denies

4   committing the alleged misconduct, "the question critical to defendants' liability is not whether

5   plaintiff in fact [committed the misconduct], but whether at the time the decision to terminate

6   his employment was made, defendants, acting in good faith and following an investigation that

7   was appropriate under the circumstances, had **reasonable grounds for believing** plaintiff had

8   done so." *Cotran* at 109 (emphasis added).  Plaintiff will not be able to present facts that dispute

9   managements' good faith reliance on the information they received from associates as well as

10  their understanding of Wal-Mart's policy on theft.  Therefore, this cause of action should be

11  dismissed.

12  **C.    The Undisputed Evidence Demonstrates that Plaintiff Cannot Prevail on the**

13         **Second Cause of Action for Breach of Implied Covenant of Good Faith and Fair**

14         **Dealing**

15         The Restatement of Contract Section 205 states, "Every contract imposes upon each

16  party a duty of good faith and fair dealing in its performance and its enforcement." *Foley* at 683.

17  The Court in *Foley* found that it was not appropriate to extend tort remedies to a breach of the

18  implied covenant in employment cases.   *Foley* at 693.   The Court stated: "As we have

19  reiterated, the employment relationship is fundamentally contractual, and several factors

20  combine to persuade us that in the absence of legislative direction to the contrary contractual

21  remedies should remain the sole available relief for breaches of the implied covenant of good

22  faith dealing in the employment context." *Foley* at 696.  Thus, this covenant cannot impose any

23  substantive duties or limits on the contracting parties beyond those incorporated in the specific

24  terms of their agreement.  *Guz* at 349-352.

25         When an employer's actions amount to a breach of an implied contract and a second

26  claim for the breach of implied covenant merely re-alleges that breach of implied contract, as

27  Plaintiff has done in this lawsuit, this second claim is superfluous because the employee's

28  remedy is solely contractual.  *Guz* at 352.  Here, Plaintiff's first cause of action for Breach of

1  Implied-in-Fact Contract fails because the undisputed evidence shows that Plaintiff did not have

2  a written or implied-in-fact employment contract with Wal-Mart, or in the alternative, that Wal-

3  Mart did not breach such a contract as it terminated her for good cause.  Therefore, because

4  Plaintiff fails to raise triable issues related to her first cause of action, this related cause of

5  action should fail.

6                                           **IV.   <u>CONCLUSION</u>**

7          In summary, Wal-Mart clearly intended the employment relationship between itself and

8  Plaintiff to be at-will as evidenced by the numerous documents stating that agreement.  Plaintiff

9  attested to that agreement through reading and signing those numerous documents.  If the court

10  finds that the at-will relationship was ambiguous, then the undisputed facts establishes that a

11  written or implied-in-fact contract did not exist.   If an implied-in-fact contract is found to exist,

12  the undisputed facts prove that Wal-Mart had good cause for Plaintiff's termination.  For all of

13  the foregoing reasons, Plaintiff's First Cause of Action should be dismissed because there is no

14  triable issue of material fact.

15          Plaintiff's Second Cause of Action should also be dismissed because Plaintiff's First

16  Cause of Action failed and/or because it is superfluous and provides Plaintiff with no additional

17  remedies.

18

19                                          Respectfully Submitted,

20  Date: May 6, 2011                       **PHILLIPS, SPALLAS & ANGSTADT LLP**

21

22                                          By:   <u>/s/ Gregory Spallas</u>
                                                 Gregory L. Spallas, Esq.
23                                               Shivani Sutaria, Esq.
                                                 Attorneys for Defendant
24                                               WAL-MART, STORES, INC.

25

26

27

28