IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY J. POMEROY, | CASE NO. CV F 09-2209 LJO GSA |
| Plaintiff, | **SUMMARY JUDGMENT DECISION** (Doc. 27.) |
| vs. | |
| WAL-MART STORES, INC., | |
| Defendant. | |

## INTRODUCTION

Defendant Wal-Mart Stores, Inc. ("Wal-Mart") seeks summary judgment in the absence of evidence to support plaintiff Betty J. Pomeroy's ("Ms. Pomeroy's") breach of contract claims arising from termination of her long-time employment which Wal-Mart characterizes as at-will. Ms. Pomeroy responds that her length of service, management's oral assurances of security, and the absence of good cause for her termination raise factual issues to defeat summary judgment. This Court considered Wal-Mart's summary judgment motion on the record without a hearing, pursuant to Local Rule 230(g).[1] For the reasons discussed below, this Court GRANTS Wal-Mart summary judgment.

---

[1] This Court carefully reviewed and considered the record, including all evidence, arguments, points and authorities, declarations, testimony, statements of undisputed facts and responses thereto, objections and other papers filed by the parties. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment. This Court does not rule on objections in a summary judgment context, unless otherwise noted.

1

# BACKGROUND

## Summary

Wal-Mart employed Ms. Pomeroy in various positions for more than 31 years and terminated her for "gross misconduct" after she failed to pay for a replacement watch band.  Ms. Pomeroy pursues breach of implied contract of continued employment and breach of implied covenant of good faith and fair dealing claims to challenge her termination "without good and just cause."  Wal-Mart contends that Ms. Pomeroy's employment was at will and that she lacked an implied-in-fact contract for continued employment to support her claims.

## Ms. Pomeroy's Wal-Mart Employment

In 1976, a Wal-Mart store in Carthage, Missouri hired Ms. Pomeroy as a sales associate.  At that store, Ms. Pomeroy also worked as sporting goods and automotive department heads and as a receiving department associate.  All positions were hourly.

In 1989, Wal-Mart transferred Ms. Pomeroy to a Webb City, Missouri store and promoted her to receiving department manager, an hourly position.

In 1990, Ms. Pomeroy requested a transfer to a Bakersfield Wal-Mart store and was assigned to store number 1574 in Bakersfield.  Since the store was not constructed, Ms. Pomeroy initially assisted in hiring several hundred store associates.  After the store opened, Ms. Pomeroy worked as an invoice clerk and was responsible for incoming and outgoing monies.  Later, Ms. Pomeroy worked as an associate in the cash office.  She was hired as receiving manager when the position opened.  These positions were hourly.

In August 1998, Ms. Pomeroy transferred to store number 2557 in Bakersfield to work in a direct store delivery position, also hourly.  Ms. Pomeroy remained in this full-time position until her December 5, 2007 termination at which time Ms. Pomeroy received a $20.31 hourly rate and other employee benefits.

Ms. Pomeroy notes that she consistently received performance appraisals in which she was rated as "exceeds expectations" and including her last November 26, 2007 appraisal.  Wal-Mart notes that during her 31-year employment, Ms. Pomeroy received performance evaluations, pay raises and promotions based on her performance evaluations.

**Watch Repair**

On December 3, 2007, Ms. Pomeroy took her husband's watch to her store's jewelry department and asked jewelry department manager Vicky Knox ("Ms. Knox") if Ms. Knox could repair the watch's broken band. Ms. Pomeroy instructed Ms. Knox that if the watchband needed repair, to repair it and that Ms. Pomeroy would pick it up when she left work that day.

After work on December 3, 2007, Ms. Knox went to the jewelry department and was informed that Ms. Knox was at lunch. Jewelry department sales associate Sara Bustamante ("Ms. Bustamante") located the watchband and handed it to Ms. Pomeroy who claims that the watchband was in the original packaging which Ms. Pomeroy had delivered the watchband to the jewelry department and that the package did not have a second watchband to indicate that the broken watchband had been replaced. Ms. Pomeroy further claims that the package lacked a UPC sticker.

Ms. Pomeroy asked Ms. Bustamante if she owed anything for the repairs. Ms. Bustamante looked briefly around the jewelry department counter and told Ms. Pomeroy that she could not locate anything to indicate repairs or charges for repairs for the watchband. Ms. Pomeroy provided Ms. Bustamante her cell phone number and told Ms. Bustamante to ask Ms. Knox on her return from lunch to telephone Ms. Pomeroy if there were watchband charges and inform Ms. Knox that Ms. Pomeroy would return to pay the charges. Ms. Pomeroy claims that Ms. Knox never contacted her during the remainder of December 3, 2007 and that Ms. Pomeroy was not advised of any service repair. Ms. Pomeroy testified: "I just told her if there was any questions have [Ms. Knox] call me because she said as far as she was concerned it looked like [Ms. Knox] had just fixed it and that there was no charge." Ms. Pomeroy attributed Ms. Bustamante to indicate no charge.

Ms. Pomeroy took the watch home with her without making a payment.

**Wal-Mart's Investigation**

On December 4, 2007, receiving associate Kristi Swan ("Ms. Swan") told assistant manager Mario Esparza ("Mr. Esparza") that Ms. Pomeroy had left work with a new, unpaid for watchband. Mr. Esparza and/or asset protection coordinator Michael Downes ("Mr. Downes"), now deceased, obtained statements from Ms. Knox, Ms. Bustamante, Ms. Swan, receiving department employee Benita Medrano ("Ms. Medrano"), and claims associate Silvia Ponce de Leon ("Ms. Ponce de Leon").

1    Ms. Knox told Mr. Esparza and/or Mr. Downes that on December 3, 2007, Ms. Pomeroy gave
2 her a watch to fix and that Ms. Knox informed Ms. Pomeroy that she could not repair the watchband and
3 that the watch needed a new band.  Ms. Knox attributes Ms. Pomeroy to have agreed to replace the
4 watchband and to acknowledge that Ms. Pomeroy would be required to pay for the new watchband and
5 would pick it up before she left work that day.  Ms. Knox placed in a bag the watch with the new band
6 affixed, the old band, and a note that read: "Betty's Watch Receiving New Watch Band. Not Pd. For."
7 Ms. Knox also told Mr. Esparza and/or Mr. Downes that Ms. Pomeroy wrote her cell phone number on
8 a piece paper for Ms. Knox.
9    Ms. Bustamante told Mr. Esparza and/or Mr. Downes that Ms. Pomeroy retrieved the repaired
10 watch from her on December 3, 2007, that Ms. Bustamante told Ms. Pomeroy that Ms. Bustamante did
11 not know if money was owed for the repair, and that Ms. Pomeroy said she would speak with Ms. Knox
12 on December 4, 2007.
13    Claims associate Ms. Ponce de Leon told Mr. Esparza and/or Mr. Downes that Ms. Knox had
14 spoken to Ms. Ponce de Leon about Ms. Pomeroy not paying for the new watchband.  Ms. Ponce de
15 Leon telephoned receiving for Ms. Pomeroy, who was at lunch, and left a message with coworker Ms.
16 Medrano to inform Ms. Pomeroy to telephone Ms. Ponce de Leon and to pay for the watchband.  Ms.
17 Medrano told Mr. Esparza and/or Mr. Downes that Ms. Medrano had told Ms. Pomeroy about Ms. Ponce
18 de Leon's message after Ms. Pomeroy returned from lunch and that Ms. Pomeroy needed to pay for her
19 things.  Ms. Medrano attributes Ms. Pomeroy to acknowledge that she knew she needed to do so.
20    Ms. Swan, Ms. Pomeroy's receiving coworker, told Mr. Esparza and/or Mr. Downes that she had
21 informed Ms. Pomeroy that she needed to pay for the watchband and that Ms. Pomeroy acknowledged
22 that she knew she needed to do so.  In her deposition, Ms. Pomeroy testified that Ms. Swan "had said
23 something to me on the 5th, 'By the way don't forget your watch.' . . . I just said okay and kept on
24 working."
25    After collecting the witness statements, asset protection coordinator Mr. Downes met with the
26 store manager Jack Persons ("Mr. Persons") and secured videotape of Ms. Pomeroy retrieving the watch
27 at the jewelry department counter on December 3, 2007.  Mr. Downes also consulted market asset
28 protection manager Kevin King ("Mr. King").

4

**Ms. Pomeroy's Termination**

Ms. Pomeroy worked on December 4, 2007 and did not pay for the new watchband. As of coming to work on December 5, 2007, Ms. Pomeroy realized the watchband was new and had not been paid for. Ms. Pomeroy worked almost her entire December 5, 2007 eight-hour shift and had taken lunch, during which time Wal-Mart notes that "associates can shop and take care of personal business."

On December 5, 2007, Mr. Downes determined that sufficient time had passed for Ms. Pomeroy to have paid for the watchband and that her failure to do so constituted "Gross Misconduct – Integrity Issue." On that date, Ms. Pomeroy met with Mr. Downes and assistant manager Barbara Richardson ("Ms. Richardson") for 20-30 minutes and Mr. Downes informed Ms. Pomeroy that she was terminated for theft of the watchband.[2] In her deposition, Ms. Pomeroy testified that she attempted to explain to Mr. Downes "the events." Ms. Pomeroy further testified as to her version of the events which she had recounted for Mr. Downes. Ms. Pomeroy claims at her termination, Mr. Downes for the first time produced the actual package for the new watchband which contained the old watchband.

**Wal-Mart's Policies**

Wal-Mart's Coaching for Improvement Policy ("coaching policy") addresses "Gross Misconduct" and states:

> Gross Misconduct will not be tolerated. Coaching for Improvement will not be used to address gross misconduct. The employment of an Associate who is deemed to have engaged in gross misconduct is subject to immediate termination.

The coaching policy lists "Theft" and "Dishonesty/Compromised integrity" as gross misconduct subject to immediate termination.

Ms. Pomeroy was aware that Wal-Mart associates could be terminated without coaching policy progressive discipline. Ms. Pomeroy testified that she considered as gross misconduct theft and stealing in any amount. In responses to Wal-Mart's requests for admission, Ms. Pomeroy admitted that taking

---

[2] The parties are unclear who made the actual decision to terminate Ms. Pomeroy. There is no dispute that store manager Mr. Persons, market asset protection manager Mr. King, and co-manager Minh Nguyen did not authorize Ms. Pomeroy's termination. There is no dispute that Ms. Richardson did not participate in the termination decision. However, there is a dispute whether Mr. Downes was authorized to terminate Ms. Pomeroy. Mr. Persons testified that Mr. Downes was authorized to terminate Ms. Pomeroy but Mr. King testified that Mr. Downes required the "blessing" of store manager Mr. Persons. Despite the lack of clarity, the record indicates that Mr. Persons implicitly authorized Mr. Downes to terminate Ms. Pomeroy. Mr. Persons testified that he had no reason to question Ms. Pomeroy's termination.

merchandise without payment violates Wal-Mart policy. Ms. Pomeroy testified that Wal-Mart takes integrity seriously and that disobedience of Wal-Mart policy could warrant termination.

**At-Will Employment**

Wal-Mart notes that consistent with the retail industry, Wal-Mart has at-will relationships with its associates. Ms. Pomeroy testified that she knew that she could have left her employment at anytime.

In 1990, Ms. Pomeroy signed a Transfer Notice for Hourly Personnel form which states in part: "I understand I will remain terminable-at-will and free to resign at any time I wish." In 1994, Ms. Pomeroy signed an Acknowledgment of Receipt of Alcohol and Drug Abuse Policy form which states in part: "I understand this is not a contract for employment and that I remain 'terminable at will' and free to resign at any time I wish."

Ms. Pomeroy testified that during performance evaluations, she was not assured of future employment or job security. Ms. Pomeroy further testified that no one made statements that Ms. Pomeroy was wanted forever. Ms. Pomeroy attributed two managers at the Bakersfield stores to have told her that she "was doing a great job," "would probably be around forever," and "was part of the fixtures around there."

**Absence Of Written Employment Contract**

In response to Wal-Mart's requests for admission, Ms. Pomeroy admitted that she never signed a written employment contract.

In 1994, 1998 and 2001, Ms. Pomeroy signed forms to acknowledge that she had received and read the Wal-Mart Associate Handbook ("Wal-Mart handbook"). The acknowledgment forms stated: "This handbook is not a contract." The 1998 and 2001 acknowledgment forms state: "I understand that the information contained in this handbook are guidelines only, and are in no way interpreted as a contract."

Ms. Pomeroy testified that she lacks witnesses, letters, documents or policies to support that she had an implied employment contract. Ms. Pomeroy further testified that during her employment, "[i]t never crossed my mind" that she could be terminated at any time.

**Ms. Pomeroy's Claims**

Ms. Pomeroy proceeds on her First Amended Complaint ("FAC") to allege that:

6

1. She "consistently received good to excellent performance evaluations and merit raises, was assured on numerous occasions that she would not be terminated arbitrarily" to conclude that she and Wal-Mart "had entered into an implied contract that plaintiff would not be discharged unless there was good cause to do so";

2. Based on Wal-Mart's "oral representations and promises and conduct," Ms. Pomeroy "had an employment contract with defendant that she would be employed with defendant so long as her employment was satisfactory and that defendant would not discharge her without good and just cause"; and

3. Ms. Pomeroy's employment "contained an implied covenant of good faith and fair dealing which obligated the defendant to perform the terms and conditions of the agreement fairly and in good faith and refrain from doing any act that would prevent or impede any or all conditions of the contract."

The FAC alleges:

1. A (first) breach of implied contract of continued employment claim ("implied contract claim") that Wal-Mart terminated Ms. Pomeroy's employment "without specifying any cause for termination" to "breach the employment contract"; and

2. A second claim that Wal-Mart breached the implied covenant in good faith and fair dealing under the employment agreement by "discharging plaintiff without cause" and "violating and failing to follow its own personnel procedures by not providing plaintiff with written warning of performance deficiencies before discharge" ("implied covenant claim").

## DISCUSSION

### Summary Judgment Standards

Wal-Mart seeks summary judgment in that Ms. Pomeroy was at-will, lacked a written or implied-in-fact contract, and thus cannot support her implied contract and implied covenant claims.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to

7

judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th

Cir. 2000); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (2007) (moving party is able to prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case"); *High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)). "The mere existence of a scintilla of evidence in support of the

9

1  plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

2  As discussed below, Ms. Pomeroy fails to raise factual issues as to her implied contract and
3  implied covenant claims to defeat summary judgment in Wal-Mart's favor.

### **Presumption Of At-Will Employment**

5  Wal-Mart argues that its at-will relationship with Ms. Pomeroy defeats her implied contract
6  claim.

7  Under California law, an employee's term of employment, when not specified in an employment
8  contract or other document or oral agreement, is considered a term that may be terminated "at will" by
9  either party. Cal. Labor Code, § 2922 ("An employment, having no specified term, may be terminated
10 at the will of either party on notice to the other.") "Thus, in the absence of any evidence of the duration
11 or term of employment under a written or oral agreement, there is a statutory presumption that
12 employment is terminable at will, and a contract of employment may be ended at any time at the option
13 of either party." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1386, 88 Cal.Rptr.2d
14 802 (1999). California Labor Code section 2922 creates a presumption that employment is terminable
15 "at will." *Hoy v. Sears, Roebuck & Company*, 861 F.Supp. 881, 884 (N.D. Cal. 1994); *Hillsman v.*
16 *Sutter Community Hospitals*, 153 Cal.App.3d 743, 749, 200 Cal.Rptr. 605 (1984). "An at-will
17 employment may be ended by either party 'at any time without cause,' for any or no reason, and subject
18 to no procedure except the statutory requirement of notice." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317,
19 335, 100 Cal.Rptr.2d 352 (2000).

20 The at-will presumption may be rebutted only by evidence of an express or implied agreement
21 that the employment will terminate only "for cause." *Hoy*, 861 F.Supp. at 885; *Foley v. Interactive Data*
22 *Corp.*, 47 Cal.3d 654, 668, 254 Cal.Rptr. 211 (1988); *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311,
23 324-325, 171 Cal.Rptr. 917 (1981). A contract requiring termination only "for cause" will not be
24 implied if there is an express writing to the contrary. *Hoy*, 861 F.Supp. at 885.

25 Wal-Mart argues that its relationship with Ms. Pomeroy was at will in that:

26 1.   Ms. Pomeroy testified that she understood that she could leave whenever she wanted;
27 2.   Ms. Pomeroy signed a 1990 form, which states: "I understand I will remain terminable-
28      at-will and free to resign at any time I wish"; and

1        3.     Ms. Pomeroy signed a 1994 form, which states: "I understand this is not a contract for
2               employment and that I remain 'terminable at will' and free to resign anytime I wish."

Wal-Mart is correct that Ms. Pomeroy fails to acknowledge the "extremely strong presumption of an at-will employment relationship" and that she signed several documents to acknowledge her at-will employment. As discussed below, Ms. Pomeroy offers nothing to challenge the presumption of her at-will employment, despite Ms. Pomeroy's unavailing comments about expected continued employment.

**Absence Of Written Employment Contract**

Wal-Mart notes the absence of a written contract to overcome the at-will presumption.

The "issue of the existence of an implied-in-fact contract not to terminate except for good cause may appropriately be resolved as a matter of law given the undisputed facts of a particular case." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal.App.4th 1359, 1386-1387, 88 Cal.Rptr.2d 802 (1999). "To raise a triable issue of material fact and defeat an employer's motion for summary judgment based on the presumption of at-will employment, a plaintiff must produce competent evidence of an agreement that he or she could not be discharged without good cause." *Eisenberg*, 74 Cal.App.4th at 1387, 88 Cal.Rptr.2d 802.

Wal-Mart points the absence of its written agreements with associates and Ms. Pomeroy's request for admission response that she never signed an employment agreement with Wal-Mart. Ms. Pomeroy acknowledges the absence of an express employment agreement. As such, this Court turns to whether an actionable implied-in-fact contract exists.

**Absence Of Implied-In-Fact Employment Contract**

Wal-Mart challenges the existence of an implied-in-fact contract to overcome the at will presumption. Wal-Mart notes Ms. Pomeroy's inability to identify a witness, document, letter or policy to support an implied-in-fact contract. Ms. Pomeroy responds that an implied-in-fact contract may arise from the parties' conduct to evidence their intent.

"The absence of an express written or oral contract term concerning termination of employment does not necessarily indicate that the employment is actually intended by the parties to be 'at will,' because the presumption of at-will employment may be overcome by evidence of contrary intent." *Foley*, 47 Cal.3d at 677, 254 Cal.Rptr. 211. "The contractual understanding need not be express, but

11

may be implied in fact, arising from the parties' conduct evidencing their actual mutual intent to create such enforceable limitations." *Guz*, 24 Cal.4th at 336, 100 Cal.Rptr.2d 352. "[I]t must be determined, as a question of fact, whether the parties acted in such a manner as to provide the necessary foundation for [an implied contract], and evidence may be introduced to rebut the inferences and show that there is another explanation for the conduct." *Silva v. Providence Hospital of Oakland,* 14 Cal.2d 762, 774, 97 P.2d 798 (1939).

"In the employment context, factors apart from consideration and express terms may be used to ascertain the existence and content of an employment agreement, including 'the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged.'" *Foley*, 47 Cal.3d at 680, 254 Cal.Rptr. 211(citation omitted). "In determining the existence of such a promise of termination only for cause, we look to the entire relationship of the parties, including such factors as the terms of any relevant application for employment, employee handbook or manual; the personnel policies and practices of the employer; the employee's longevity of service; actions or communications by the employer constituting assurances of continued employment; and the practices of the industry in which the employee is engaged." *Eisenberg*, 74 Cal.App.4th at 1388, 88 Cal.Rptr.2d 802.

### *Personnel Policies And Practices*

Wal-Mart argues that its personnel documents demonstrate that the employment relationship with Ms. Pomeroy was "non-contractual." Wal-Mart points to Ms. Pomeroy's 1994, 1998 and 2001 forms to acknowledge her receipt and reading of the Wal-Mart handbook, the "handbook is not a contract," and her understanding "that the information contained in this handbook are guidelines only, and are in no way interpreted as a contract." Wal-Mart reiterates that other 1990 and 1994 forms state: "I understand I will remain terminable-at-will and free to resign at any time I wish"; and "I understand this is not a contract for employment and that I remain 'terminable at will' and free to resign anytime I wish."

Disclaimer language "does not necessarily mean an employee is employed at will. But even if a handbook disclaimer is not controlling . . . in every case, neither can such a provision be ignored in determining whether the parties' conduct was intended, and reasonably understood, to create binding

12

limits on an employer's statutory right to terminate the relationship at will." *Guz*, 24 Cal.4th at 340, 100 Cal.Rptr.2d 352. The "more clear, prominent, complete, consistent, and all-encompassing the disclaimer language set forth in handbooks, policy manuals, and memoranda disseminated to employees, the greater the likelihood that workers could not form any reasonable contrary understanding." *Guz*, 24 Cal.4th at 340, n. 11, 100 Cal.Rptr.2d 352. "[W]e do not foreclose the possibility an employer could promulgate a disclaimer clause which established beyond contrary inference that the employer intended employment to be at will." *Guz*, 24 Cal.4th at 340, n. 11, 100 Cal.Rptr.2d 352.

Wal-Mart argues that its documents' disclaimer language "forecloses any question of Wal-Mart's intent to maintain an at-will relationship." Ms. Pomeroy contends that Wal-Mart's disclaimer language "cannot dispose of the question of an implied-in-fact contract in the face of evidence of the contrary."

Wal-Mart's disclaimer language is clear, complete and consistent. Ms. Pomeroy signed several documents to acknowledge that she was "terminable-at-will." Ms. Pomeroy points to no meaningful evidence to the contrary. Wal-Mart's disclaimer language supports the absence of an implied-in-fact contract of continued employment.

Wal-Mart argues that its coaching policy of progressive discipline fails to establish a policy or requirement of good cause termination, "particularly in cases where the employer also has a written policy of at-will employment." *See Davis v. Consolidated Freightways*, 29 Cal.App.4th 354, 367, 34 Cal.Rptr.2d 438 (1994) (progressive discipline for managers failed to rebut statutory presumption of at-will employment). Wal-Mart argues that its reference to the coaching policy's "gross misconduct" of theft fails to negate an at-will relationship.

Ms. Pomeroy argues that Wal-Mart guidelines to investigate gross misconduct support an implied-in-fact contract.

Ms. Pomeroy's expectation that policies would be followed fails to establish an implied-in-fact contract. Ms. Pomeroy points to no specific investigative guidelines. Ms. Pomeroy's chief gripe is that she was denied an opportunity to explain the circumstances. However, she testified at length to the version of events she provided to Mr. Downes. Wal-Mart's investigatory guidelines fail to support Ms. Pomeroy's implied contract claim.

///

### *Length Of Employment*

Wal-Mart acknowledges Ms. Pomeroy's 31-year employment and favorable performance reviews with pay increases but argues they do not create an implied-in-fact contract.

In *Guz*, 24 Cal.4th at 341-342, 100 Cal.Rptr.2d 352, the California Supreme Court addressed an employment longevity:

> . . . an employee's mere passage of time in the employer's service, even where marked with tangible indicia that the employer approves the employee's work, cannot alone form an implied-in-fact contract that the employee is no longer at will. Absent other evidence of the employer's intent, longevity, raises and promotions are their own rewards for the employee's continuing valued service; they do not, in and of themselves, additionally constitute a contractual guarantee of future employment security. A rule granting such contract rights on the basis of successful longevity alone would discourage the retention and promotion of employees.

Wal-Mart argues that regardless of Ms. Pomeroy's length of employment, it "could have ended at either party's choosing as it was an at-will relationship." Wal-Mart points to Ms. Pomeroy's testimony that she believed she could leave at anytime.

Wal-Mart further contends that Ms. Pomeroy's favorable performance evaluations with pay increases do not create an implied-in-fact contract given the absence of "assurances of future employment or job security." Wal-Mart notes that its providing favorable performance reviews with pay increases "did not negate its intent" of at-will employment.

Ms. Pomeroy's longevity of service with promotions and salary increases alone fail to support an implied-in-fact contract. "Promotions and salary increases are natural occurrences of an employee who remains with an employer for a substantial length of time. These factors should not change the status of an 'at-will' employee to one dischargeable only for 'just cause.'" *Miller v. Pepsi-Cola Bottling Co.*, 210 Cal.App.3d 1554, 1559, 259 Cal.Rptr. 56 (1989). Ms. Pomeroy fails to support her implied contract by merely pointing to her length of service.

### *Absence Of Assurances*

Wal-Mart challenges Ms. Pomeroy's ability to establish assurances of indefinite employment given her testimony to deny she was told that she was wanted "forever" and that her job was secure. Wal-Mart argues that Ms. Pomeroy's belief in indefinite employment and good cause termination is irrelevant. *See Eisenberg*, 74 Cal.App.4th at 1387, 88 Cal.Rptr.2d 802 (despite plaintiff's understanding,

"a plaintiff must produce competent evidence of an agreement that he or she could not be discharged without good cause"). Wal-Mart points to Ms. Pomeroy's testimony that "[i]t never crossed my mind" that she could be terminated at any time. Wal-Mart concludes that Ms. Pomeroy's "thoughts, or lack of thoughts on the issue, are insufficient to prove the existence of an actual promise or assurance of a specified term or job security."

Ms. Pomeroy exaggerates assurances of continued employment. Ms. Pomeroy merely attributed two managers at the Bakersfield stores to have told her that she "was doing a great job," "would probably be around forever," and "was part of the fixtures around there." Ms. Pomeroy testified that during performance evaluations, she was not assured of future employment or job security. Ms. Pomeroy further testified that no one made statements that Ms. Pomeroy was wanted forever. Her comments of made to feel like "family" are unavailing. Ms. Pomeroy's observations of only for cause termination are irrelevant and fail to substantiate oral assurances for an implied-in-fact contract.

### *Retail Industry Practice*

Wal-Mart further relies on at-will employment as "the custom and practice of the retail industry." Wal-Mart points to the declaration of one of its human resource managers to that effect.

Ms. Pomeroy offers nothing to rebut retail industry custom of at-will employment. Such absence further supports Wal-Mart's position of no implied-in-fact contract.

### **Good Cause**

Wal-Mart argues that Ms. Pomeroy's theft of the watchband constitutes good cause to terminate her and in turn to defeat her implied contract claim.

"Good cause" in the context of implied employment contracts is defined "as fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual. A reasoned conclusion, in short, supported by substantial evidence gathered through an adequate investigation that includes notice of the claimed misconduct and a chance for the employee to respond." *Cotran v. Rollins Hudig Hall Intern., Inc.*, 17 Cal.4th 93, 107-108, 69 Cal.Rptr.2d 900 (1998).

Wal-Mart argues that based on information from multiple witnesses, "management reasonably concluded that Plaintiff had been informed, at least by December 4, 2007, that she needed to pay for the

1  new watchband." Wal-Mart notes that Ms. Pomeroy was "put on notice on multiple occasions of the
2  need to pay for the watchband" and that Ms. Pomeroy had not paid for it for nearly 48 hours following
3  her picking it up on December 3, 2007. Wal-Mart contends that management possessed "reasonable
4  grounds" to believe that Ms. Pomeroy knowingly failed to pay for the watch to warrant her termination.
5  Wal-Mart challenges Ms. Pomeroy's evidence that Wal-Mart lacked good cause given Ms. Pomeroy's
6  acknowledgment that failure to pay for merchandise constituted a "terminable offense."

7       Wal-Mart continues that "the proper inquiry is whether management possessed 'good cause' in
8  making the termination decision." The "critical" question is "whether at the time the decision to
9  terminate [plaintiff's] employment was made, defendants, acting in good faith and following an
10 investigation that was appropriate under the circumstances, had reasonable grounds" to believe that
11 plaintiff had engaged in misconduct. *Cotran*, 17 Cal.4th at 109, 69 Cal.Rptr.2d 900.

12       Ms. Pomeroy accuses Wal-Mart of failing "to conduct an adequate investigation" and to give her
13 a "chance to respond to the allegations against her." Ms. Pomeroy points to her good faith belief that
14 she did not owe money for the watchband. Ms. Pomeroy criticizes the process to reach the termination
15 determination in the absence of higher management's involvement.

16       Wal-Mart responds that Ms. Pomeroy's comments about her actions and intentions "are
17 irrelevant to whether management possessed good cause in making the termination decision." Wal-Mart
18 points to its knowledge base at the time of the termination decision and which included statements from
19 several employees and unequivocal evidence that Ms. Pomeroy had not paid for the watchband after the
20 passing of two days.

21       Wal-Mart is correct. The record reveals that at the time of the termination decision, Ms.
22 Pomeroy was on notice an issue remained about payment for the watchband. Ms. Pomeroy
23 acknowledges, and her actions confirm, that she was required to pay for a new watchband. Ms. Pomeroy
24 fails to refute that coworkers advised her of the need to address payment of the watchband. In the end,
25 Mr. Downes gathered evidence to establish that Ms. Pomeroy failed to pay for the watchband. During
26 her 20-30 minute meeting with Mr. Downes and Ms. Richardson, Ms. Pomeroy explained her version
27 of events.

28       Ms. Pomeroy's criticism of the decision making process also fails to demonstrate an absence of

good cause to terminate her. As Wal-Mart correctly notes, "focus is on the investigation." Although Ms. Pomeroy questions Mr. Downes authority to terminate her, the record indicates that store manager Mr. Persons supported Mr. Downes' decision. Alleged lack of clarity on the decision making process fails to negate the investigation process to support termination and in turn whether Wal-Mart acted in good faith.

### **Breach Of Implied Covenant Of Good Faith And Fair Dealing**

Wal-Mart argues that the FAC's implied covenant claim fails with the FAC's implied contract claim and is superfluous in that it realleges breach of an implied contract on which Ms. Pomeroy is unable to recover.

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). A breach of implied covenant of good faith and fair dealing claim "must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal.Rptr. 387 (1990).

The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008). "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz,* 24 Cal.4th at 349-350, 100

Cal.Rptr.2d 352).

The "employment relationship is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees." *Foley*, 47 Cal.3d at 693, 254 Cal.Rptr.2d 211.  The "employment relationship is fundamentally contractual, and several factors combine to persuade us that in the absence of legislative direction to the contrary contractual remedies should remain the sole available relief for breaches of the implied covenant of good faith and fair dealing in the employment context."   *Foley*, 47 Cal.3d at 696, 254 Cal.Rptr.2d 211.

Ms. Pomeroy offers nothing to support the implied covenant claim.  This Court construes such absence of support as Ms. Pomeroy's concession that the implied covenant claim fails.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS Wal-Mart summary judgment;
2. VACATES the July 14, 2011 pretrial conference and August 29, 2011 trial; and
3. DIRECTS the clerk to enter judgment in favor of defendant Wal-Mart Stores, Inc. and against plaintiff Betty J. Pomeroy and to close this action.

IT IS SO ORDERED.

**Dated:   July 5, 2011                        /s/ Lawrence J. O'Neill**

UNITED STATES DISTRICT JUDGE